UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00545-GNS

**JOHN E. GRIFFIN**                                                                                          **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                                                **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of John E. Griffin ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations (DN 12). By Order entered June 20, 2018 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On November 14, 2014, Plaintiff protectively filed an application for Disibility Insurance Benefits (Tr. 26, 167-70). Plaintiff alleged that he became disabled on November 14, 2014, as a result of impairments to his back and both knees (Tr. 26, 167, 217). Administrative Law Judge Teresa A. Kroenecke ("ALJ") conducted a hearing on December 7, 2016, in Louisville, Kentucky. Plaintiff was present and represented by attorney Trevor A. Smith. Also present and testifying was Linda L. Jones, a vocational expert.

In a decision dated February 6, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 26-36). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 14, 2014, the alleged onset date (Tr. 28). At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: lumbar degenerative disc disease and right knee degenerative joint disease with meniscus tear (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 29).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work, except he is limited to occasional balancing, stooping, and crouching; occasional climbing of ramps and stairs; no kneeling or crawling; no climbing of ladders, ropes, or scaffolding, no exposure to extreme heat or cold, humidity, wetness, vibration, or hazards of unprotected heights and dangerous machinery; should be allowed to alternate into a sitting position from a standing and walking position every thirty to forty-five minutes for two to three minutes while working at a work station; and allowed to alternate from standing position to sitting position

every thirty to forty-five minutes for two to three minutes while at the work station; and needs to use a cane for ambulating (Tr. 29-30). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is capable of performing his past relevant work as an electronics technician (Tr. 35). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 14, 2014, through the date of the decision, February 6, 2017 (Tr. 36).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 165-66). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step because she concluded that Plaintiff was capable of performing his past relevant work as an electronics technician.

### Challenged Findings

#### A.

1. The Parties' Arguments

Plaintiff challenges to Finding Nos. 3, 4, 5, 6, and 7 (DN 13 PageID # 956-67). Plaintiff objects to *Finding No. 3* as the ALJ did not consider whether his Level 1 obesity[1] is a severe impairment despite uncontradicted evidence showing he had been obese for over 12 months (Id. PageID # 956-57). Plaintiff argues this omission became reversible error at the next steps because the ALJ failed to consider the combined effects that his Level 1 obesity had on his

---

1 Plaintiff explains that he is 71 inches tall and points out that the medical evidence in the record shows he consistently had Level 1 obesity during the adjudicated period (DN 13 PageID # 957 citing Tr. 611, 627, 651, 655, 826, 841, 853, and Tr. 49). Plaintiff also points out that the State agency in December 2014 and February 2015 noted that he had a body mass index (BMI) of 33 (Id. citing Tr. 84, 95).

musculoskeletal impairments (lumbar degenerative disc disease and right knee degenerative joint disease with meniscus tear) in evaluating whether he has a listing level impairment in *Finding No. 4*, in assessing his residual functional capacity (RFC) assessment in *Finding No. 5*, in determining whether he could perform his past relevant work in *Finding No. 6*, and in concluding he was not disabled in *Finding No. 7* (Id. PageID # 957-58, 958-66, citing Listing 1.00Q and Wilson v. Commissioner, 378 F.3d 541, 544 (6th Cir. 2004)[2]).

Defendant acknowledges that the evidence in the record shows during the adjudicative period Plaintiff's height to weight ratio consistently met the body mass index (BMI) criteria for Level 1 obesity as assessed by the National Institutes of Health[3] (DN 18 PageID # 979-88). She admits that the ALJ did not consider whether Plaintiff's obesity is a severe impairment (Id.). However, Defendant asserts that the error is harmless because the ALJ determined in *Finding No. 2* that Plaintiff has severe impairments and then considered all the evidence and reasonably evaluated the combined effects of Plaintiff's impairments in *Finding Nos. 3, 4, 6 and 7* (Id. citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

Defendant points out that Plaintiff has the burden of presenting evidence showing how his impairments affect his functioning during the time he alleges to be disabled (Id. citing 20 C.F.R. §§ 404.1545(a)(3) and 404.1512(a)). Additionally, Defendant argues the Sixth Circuit has held the failure to consider obesity with the cumulative effects of other impairments is not harmful error where a claimant fails to present evidence that his obesity affected his functioning/ability to work

---

[2] It is not clear why Plaintiff cites Wilson v. Commissioner, in his argument because the case does not even mention Listing 1.00Q. *See* 378 F.3d 541, 543-50 (6th Cir. 2004).

[3] Defendant concedes that the weights recorded during the adjudicative period fell within the Level 1 obesity range (DN 18 PageID # 980, citing Tr. 401, 417, 422, 426, 445, 453, 469 (239), 503, 534, 578, 581, 597, 630, 740, 758, 765, 810, 826, 848, 860, 881, 905).

(Id. citing Cranfield v. Comm'r of Soc. Sec., 79 F. App'x 852, 857-58 (6th Cir. 2003)). Defendant asserts that Plaintiff did not allege obesity as an impairment in his application paperwork or during the administrative hearing (Id. citing 41-77, 217, 247). Further, Defendant points out that no treating physician handled Plaintiff's obesity as a significant condition affecting his health or functional ability (Id.). For these reasons, Defendant argues that Plaintiff has not shown the ALJ erred by not assessing obesity as an impairment affecting his ability to work (Id. citing Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011); Essary v. Comm'r of Soc. Sec., 114 F. App'x 662, 667 (6th Cir. 2004); Cranfield, 79 F. App'x at 857-58).

    2.    Discussion

The undersigned agrees with the parties that it is unnecessary to decide whether the ALJ erred in failing to find Plaintiff's obesity is a severe impairment because this error alone is insufficient to reverse and remand the final decision of the Commissioner. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Generally, so long as an Administrative Law Judge finds that other impairments are severe, continues on with the sequential evaluation process, and considers all of a claimant's impairments in the remaining steps, the error is considered harmless. See Id.; Mish v. Comm'r of Soc. Sec., No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue, No.

1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008). Here, there are two remaining steps because the ALJ denied Plaintiff's application at the fourth step.

At the third step, the Administrative Law Judge determines whether a claimant has an impairment that meets or medically equals a listing in Appendix 1. *See* 20 C.F.R. § 404.1520(d); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987). At the fourth step, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity[4], the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. *See* 20 C.F.R. § 404.1520(e).

The listing at issue reads:

> Q. *Effects of obesity.* Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, *when determining whether an individual with obesity has a listing-level impairment* or combination of impairments, *and* when assessing a claim at other steps of the sequential evaluation process, including *when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.*

20 C.F.R. pt. 404, subpt P. app. 1, Listing 1.00Q (emphasis added). District courts in the Sixth Circuit have concluded that the highlighted language in this regulation expresses a mandatory procedural requirement. *See e.g.* Joshua v. Comm'r of Soc. Sec., No. 08-14012, 2009 WL

---

4 The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546; Social Security Ruling 96-7p.

1107681, at *9 (E.D. Mich. April 23, 2009); Lowry v. Astrue, No. 3:07CV0311, 2008 WL 4372658, at *5-6 (S.D. Ohio Sept. 19, 2008); Besecker v. Astrue, No. 3:07CV0310, 2008 WL 4000911, at *5 (S.D. Ohio Aug. 29, 2008). Notably, the Sixth Circuit in Reynolds v. Comm'r of Soc. Sec., acknowledged the procedural requirement in Listing 1.00Q but concluded "Reynolds' argument that the ALJ failed to considered her obesity fails." 424 F. App'x 411, 416 (6th Cir. 2011). The Sixth Circuit explained that the procedural requirement in Listing 1.00Q did not apply in Reynolds' case because she failed to put her obesity at issue in the administrative proceedings by listing it as one of her impairments or difficulties. Id. Additionally, the Sixth Circuit pointed out that Reynolds did not present evidence from any physician that described her as obese or expressed an opinion that Reynolds' weight imposed additional limitations upon her or exacerbated her other conditions. Id. The Sixth Circuit commented, "[t]herefore, even if Reynolds' silence on the issue of obesity is not deemed to waive consideration of that issue, it does not appear that evidence existed regarding her obesity that the ALJ should have considered." Id.

Here, the ALJ failed to comply with the procedural requirements in Listing 1.00Q at the third and fourth steps. However, Plaintiff's claim must fail because the circumstances are nearly identical to those in Reynolds. Like Reynolds, Plaintiff did not put his obesity at issue in the administrative proceedings (*see* Tr. 41-77, 217, 247). Further, like Reynolds, Plaintiff did not present evidence from any physician expressing an opinion that Plaintiff's weight imposed additional limitations upon him or exacerbated his other conditions.

In contrast to the circumstances in Reynolds, there are medical records memorializing Plaintiff's body weight at various times during the adjudicated time frame (*see* Tr. 401, 417, 422, 426, 445, 453, 469, 503, 534, 578, 581, 597, 630, 740, 758, 765, 810, 826, 848, 860, 881, 905).

There are forms the state agency prepared at the initial and reconsideration levels noting a BMI of 33 on November 6, 2014 (Tr. 84, 95). In the hundreds of pages of medical evidence there is a lone brief comment, in the "Vitals" section of a February 4, 2016 treatment note (Tr. 611). It reads "Ht 6'1", Wt 257, BMI 33.90 Index Weight Management: Patient informed BMI being above normal parameters and obesity increases risk for chronic diseases . . ." (Tr. 611). Additionally, the ALJ's decision acknowledged Plaintiff's testimony indicating he is six foot one inches tall and weighs 240 pounds (Tr. 30, 49) But these are isolated bits of information that at the time lacked significance because Plaintiff did not put his obesity at issue. In reaching this conclusion, the undersigned made every effort to eliminate the distorting effects of hindsight and perform an evaluation from the ALJ's perspective when she conducted the hearing and rendered the decision. Moreover, the record does not contain a single medical opinion indicating that Plaintiff's weight imposed addtitional limitations upon him or exacerbated his other impairments. Thus, even if Plaintiff's silence on the question of obesity is not deemed to have waived consideration of that issue, it does not appear that evidence existed in the record regarding Plaintiff's obesity that the ALJ should have considered at steps three and four. In sum, Plaintiff's argument that the ALJ committed reversible error fails.

B.

1. Arguments of the parties

Plaintiff's challenge to the residual functional capacity determination in *Finding No. 5* also includes arguments disputing the ALJ's assignment of weight to certain medical source statements and assessment of Plaintiff's subjective allegations (DN 13 PageID # 959-65). Specifically, Plaintiff disagrees with the weight assigned to the opinions of Drs. Burns and DiPiro (Id.).

Defendant asserts that Plaintiff has not cited any medical or other evidence demonstrating his impairments caused limitations beyond those the ALJ included in the residual functional capacity assessment (DN 18 PageID # 982-87).

2.  Discussion

The undersigned will begin by addressing Plaintiff's reliance on new medical evidence that he submitted to the Appeals Council in support of his request for review (DN 13 PageID # 959-60). Specifically, Plaintiff submitted medical records dated February 16, March 10, March 16, and April 11, 2017 concerning his right knee and the partial lateral meniscectomy performed on April 11, 2017 (Tr. 13-16, 21-22). The Appeals Council considered the new evidence but declined Plaintiff's request for review because the additional evidence did not affect the ALJ's decision addressing whether Plaintiff was disabled on or before February 6, 2017 (Tr. 2, 5). When, as here, the Appeals Council considers new evidence, but declines review, the Court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. *See* Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993). This approach makes sense because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-696. Thus, in the context of assessing Plaintiff's challenges to *Finding No. 5*, the undersigned will not consider medical records dated February 16, March 10, March 16, and April 11, 2017 (Tr. 13-16, 21-22).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

11

As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion

> is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Regarding Dr. DiPiro, there are two places in the decision where the ALJ discusses the assignment of weight to his opinion:

> While the claimant testified about using a cane all the time, the medical evidence of record reflects otherwise. Specifically, his gait was described as normal at various times in 2016 (Ex. 13F at 345, 52, 67, 182; Ex. 1 lF) and in 2015 (Ex. 13F at 104; Ex. lF at 7; Ex. 2F at 40, 44; Ex. 4F at 18, 56, 140; Ex. 9F at 4, 11). However, I do note antalgic gait assessments (Ex. lF at 24, 41; Ex. 4F at 23, 146). Nevertheless, I included the use of a cane for ambulating as part of his residual functional capacity consistent with Dr. DiPiro's opinion (Ex. 8F). In fact, I adopted most of Dr. DiPiro's restrictions, light lifting, sit/stand option; however, the remainder of Dr. DiPiro's opinion is not consistent with the claimant's physical exams reflecting normal neurological findings or his level of activities, working part-time, etc. In fact, the claimant's part-time earnings in 2016 increased when compared to 2015.
>
> . . .
>
> Dr. DiPiro, a medical source, opined the claimant could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk less than two hours in an eight hour workday, required the use of an assistive device for ambulation, must periodically alternate sitting and standing to relieve pain or discomfort, had limited ability to push and pull with the upper and lower extremities, never climb, kneel, crouch, crawl, or stoop, occasionally balance, and only occasionally reach due to chronic back pain (Exhibits 7F, 8F). These findings were afforded partial weight. I note the claimant testified he had seen Dr. Dipiro one to two times before this medical statement was provided. However, the medical evidence of record reflects this provider simply signed the statement, and there is no evidence Dr. DiPiro ever actually evaluated or treated the claimant (Exhibit 13F p127-139). In addition, the restrictions set forth by this provider are inconsistent with the overall treatment the claimant received, which has been very conservative in nature. In addition, the claimant's reported

13

> ability to maintain employment on a part-time basis is indicative of greater level of functioning than what was set forth by Dr. DiPiro.

(Tr. 33, 34).

Substantial evidence in the record supports the ALJ's implicit determination that Dr. DiPiro is not a treating source within the meaning of the regulations (*see e.g.*, Tr. 62-63). 20 C.F.R. § 404.1502 (see definition of treating source). Further, the ALJ appropriately noted the absence of evidence indicating Dr. DiPiro evaluated Plaintiff before expressing the limitations in the opinion. 20 C.F.R. §§ 404.1502 (definition of nontreating source) and 404.1527(c)(1) (examining relationship). The ALJ properly considered the supportability, consistency, and other factors when assigning weight to the limitations expressed in Dr. DiPiro's opinion. *See* Gayheart, 710 F.3d at 375-76; 20 C.F.R. § 404.1527(c)(3)-(6). The ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

Regarding Dr. Burns, the ALJ's decision reads:

> Dr. Burns, a consultative medical examiner, opined the claimant's physical examination was within normal limits and orthopedic examination was without limitations. This examiner found the claimant had no limits to his activities (Exhibit 5F). These findings were afforded great weight, noting the conclusions reached by this examiner were internally consistent with the paucity of clinical findings on examination.

(Tr. 34). The ALJ appropriately considered the examining relationship, consistency, and other factors in assigning great weight to Dr. Burns' opinion. 20 C.F.R. 404.1527(c)(1)-(6). Further, substantial evidence supports the weight assigned to Dr. Burns' opinion.

Regardless, the ALJ indicated that she relied on other evidence in the record to formulate the residual functional capacity assessment that limited Plaintiff to performing less than a full range of work at the light exertional level. For example, the ALJ advised that she had adopted

some of Dr. DiPiro's exertional limitations (use of cane for ambulating, light lifting, and sit/stand option) (Tr. 33). Further, the ALJ recognized the state agency medical consultants opinioned that Plaintiff could perform a limited range of work at the medium exertional level (Id.). However, the ALJ concluded that subsequently submitted evidence supported additional limitations, restricting Plaintiff to a limited range of light exertional level work activity (Id.). Thus, contrary to Plaintiff's claim, the ALJ did explain how she determined the exertional, postural, and environmental restrictions set forth in the residual functional capacity assessment.

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. The record confirms that the ALJ concluded there is objective medical evidence of underlying medical conditions but it does not confirm Plaintiff's subjective statements

concerning the severity of his pain and other symptoms (Tr. 31). Therefore, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 31-34). 20 C.F.R. § 404.1529(c)(3).

For example, the ALJ considered Plaintiff's level of daily activity, including his working part time, as a factor in determining the extent to which his pain and other symptoms are of disabling severity (Tr. 31-34). 20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.). The ALJ also observed the frequency that Plaintiff sought treatment for the allegedly disabling conditions (Id.). 20 C.F.R. § 404.1529(c)(3)(v). Additionally, the ALJ noted inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence (Id.). 20 C.F.R. § 404.1529(c)(4). The ALJ appropriately considered the conservative treatment that Plaintiff received for his impairments. 20 C.F.R. § 404.1529(c)(3)(v). The ALJ also considered statements made by third parties regarding Plaintiff's ability to function (Tr. 34). Substantial evidence in the record supports the ALJ's explanation why she discounted those statements.

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the

claimant's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

C.

Plaintiff also challenges *Finding Nos. 6 and 7* based on the arguments raised above (DN 13 PageID # 966). For the reasons set forth above, there is no merit to Plaintiff's challenges to *Finding Nos. 6 and 7*.

D.

Finally, Plaintiff argues the Appeals Counsel's decision on new and material evidence was erroneous (Id.). Plaintiff is referring to the new medical evidence that he submitted to the Appeals Council in support of his request for review (Id.). Specifically, Plaintiff submitted medical records dated February 16, March 10, March 16, and April 11, 2017 concerning his right knee and the partial lateral meniscectomy performed on April 11, 2017 (Tr. 13-16, 21-22). Contrary to Plaintiff's assertion, the Appeals Council did not issue a decision. Instead, it considered the new evidence but declined Plaintiff's request for review because the additional evidence did not affect the ALJ's decision addressing whether Plaintiff was disabled on or before February 6, 2017 (Tr. 1-5).

The Social Security Act limits judicial review to a "final decision" of the Commissioner made after a hearing. 42 U.S.C. § 405(g). When a claimant is not satisfied with an ALJ's hearing decision, the claimant may request review from the Appeals Council within sixty days of receipt of the decision. 20 C.F.R. §§ 404.067–404.968. Here, the Appeals Council denied Plaintiff's

17

request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). This means that the Court is jurisdictionally limited to reviewing the decision of the ALJ, not the Appeals Council. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993). For this reason, the Court lacks the jurisdiction to consider Plaintiff's challenge to the Appeals Counsel's denial of his request for review in light of the new medical evidence.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:	Counsel